[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs allege a breach of contract — two lease agreements for an industrial building — the first lease being executed in 1982 for the rental of 19,000 square feet, and in the following year the parties leased an additional 11,000 square feet in the same building. The building in question was originally built circa 1860 and in 1916 an annex or addition was added on. Although the building is old it was, and remains, structurally sound. Between 1962 and 1980 the Buccinos used the premises for a machine shop. Cable Technology operated a wire and cable processing facility.
The plaintiffs claim some eighteen various breaches and the defendants have filed a counterclaim.
The issues were tried to the Court, which makes the following findings and judgments.
1. Rent: The plaintiffs claim non-payment of rent for the CT Page 1974 months of August and September, 1986, and for the first eight days of June, 1987. The defendants had made their rental payments timely until a disagreement arose over parking and the cost of making changes to the sprinkler system. That dispute led to the service of a Notice to Quit alleging as reasons failure to maintain the property, failure to maintain the sprinkler system, and failure to paint the second floor ceiling, all in violation of conditions of the leases. Upon receipt of the Notice to Quit Cable Tech stopped paying rent for the months of August and September, 1986. Thereafter they resumed paying use and occupancy per Court order. Plaintiffs mischaracterize monies owed for August and September, 1986 as rent. It is in fact use and occupancy which Cable Tech owes, and freely admits they do. The Buccinos, who ultimately lost their summary process action, are not entitled to interest on use and occupancy which their action precipitated. They are entitled to recover $9,199.48 for those two months.
The Court finds that the defendants remained in possession of the premises until June 8, 1987, when the key was returned to Mr. Buccino. Although Cable Tech had moved its equipment out of the building by May 30, 1987, it did not communicate to the Buccinos, who lived across the street from the property in question, that they were no longer in possession. It was not the plaintiff's obligation to determine whether the defendants had completely moved out. A couple of automobiles belonging to employees of Cable Tech remained on the property after May 30, 1989, and Cable Tech retained the key. It is fairly the responsibility of the tenant to notify the landlord that he has vacated. Holmes v. Freeman, 23 Conn. Sup. 504 (1962). Accordingly the plaintiffs shall recover $1,226.56 for unpaid rental for the first eight days of June 1987.
2. Waste: The plaintiffs allege that Cable Tech left the property extensively damaged and in an overall poor condition. The various claims will be taken up separately, as follows:
A. Beams and Walls: The Court is not persuaded that nicks, gouges or scratches to beams and walls went beyond the ordinary wear and tear to be reasonably expected from five or six years of industrial use. The plaintiffs seek $11,000.00 to repaint the area occupied by Cable Tech. This issue rests on a factual determination to be made by the trier and the Court does not find the plaintiffs are entitled to compensation for this claim.
B. Fluorescent Lights: Some of the lights were not in CT Page 1975 working order when Cable Tech vacated. Mr. Buccino testified that he purchased and installed replacement lights for those that were invariable while Mr. Cariglia of Cable Tech testified that some lights were so old that replacement parts could not be found. He also testified that some lights were left stored on the premises when they took occupancy. As to this item, the Court does not find , the plaintiffs have proved that the defendants caused damage by abuse or unreasonable lack of due care.
C. Windows: Plaintiffs claim $155.25 for material and labor to replace broken windows. They submitted a receipt for glass purchased in December 1987, some six months after Cable Tech vacated. Mr. Cariglia stated they repaired any broken windows before they left. The Court is not persuaded that any broken windows were left by the defendants.
D. Compressor: When Cable Tech leased the property there was a compressor which was in working order. When :it failed the defendants installed a new compressor which it took when it vacated the premises. Cable Tech had used the old compressor for about one year when it failed. It was originally installed years before the defendants took possession. The plaintiffs seek $1,300.00 — the cost of a new compressor. The Court does not find they are entitled to that under the facts of this case.
E. Plumbing Repairs: Plaintiffs claim the drinking fountains and bathrooms were left filthy and in disrepair, and seek $789.00 for this item. Buccino testified that a toilet had to be replaced and submitted a check in the foregoing amount made out to a plumber. As in many of his claims, he submits no invoices to corroborate what the check covered, nor was there any other corroboration, for example, from the plumber. The validity of his claim is questioned and his offer of proof does no satisfy those questions. It is, of course, the plaintiff's burden to prove their damages and to prove the their claims are fair and reasonable. They have not met that burder.
F. Metal Door: This is a claim for $348.68 to replace a door allegedly left damaged. The door may have been as old as the original building. A photograph appears to show some damage to the door jamb, however the plaintiffs submitted no evidence of the cost to repair or its value. The door itself appears to be intact. The Court declines to award the cost of a new door to replace one which could be more than 100 years old, and which may, in fact, still be serviceable.
3. Personal Property Removed by Cable Tech: Plaintiffs CT Page 1976 claim the defendants took scaffolding, a cabinet, a table, a window frame and skid boxes. The Court finds the plaintiffs have sustained their burden of proof only as to the filing cabinet and awards $125.00 for said item.
4. Reinstallation of Office Partitions: When Cable Tech moved into the building, it relocated an office by moving some partitions and adding some new ones. The partitions were basically 2' x 4's for framing, and panelling nailed to the frame. They installed a dropped ceiling, a tile floor and electrical service to the new office area. The office was left intact when they vacated. Mr. Cariglia testified the cost of building the new office was approximately $600.00. The plaintiff seeks $8000.00 to replace or restore the original one. Again there is a question about the validity of the claim and little or nothing in the way of corroboration. Plaintiff's Exhibit II, a quotation from the AR Company is of minimal probative value and the Court would have to indulge in speculation as to a fair and reasonable amount to move the off ice to its original location. The building is essentially a factory loft and office partitions can be put up in any of a number of locations in accordance with the desires of a particular tenant. As with Cable Tech, this should not be a major undertaking and involves primarily relocating framing and paneling. The Court believes the claim of $8,800.00 is exaggerated and unwarranted by the evidence.
5. Boilers: According to the terms of the lease Cable Tech was required to maintain, repair and service the steam boilers. The plaintiff Buccino testified the boilers did not work after Cable Tech left and that it cost him $2,298.54 for necessary boiler repairs. Mr. Cariglia testified that the 11 boilers were regularly serviced and inspected and that they were in good working order. (Exhibits 13 and 16). Again, the plaintiffs submit a check to Republic Energy Center as proof of loss. The plaintiffs proofs are insufficient to satisfy the Court that he is entitled to damages.
6. Electrical System: The terms of the lease required the defendants to pay for any electrical equipment it installed and to leave any such equipment when it vacated. Cable Tech did some rewiring and increased the voltage to the building to 480 volts. It ran overhead conduits with wires coming down to the equipment used in its wire processing operation. Some of that wiring was indeed removed by Cable Tech. The defendants also admittedly (and wrongfully) removed two breakers valued at $400.00 each. The defendants utilized a rental security system which was removed by the security company from whom it was rented. The security system did not CT Page 1977 belong to Cable Tech and it was not theirs to leave behind. The plaintiffs seek $5,000.00 in damages under this item. Their offer of proof was an estimate or proposal along with a check in the amount of $3,642.53 which they claim to have expended for electrical repairs. This evidence falls short of persuading the Court they are entitled to the damages sought. Without even an invoice to back up the work the check ostensibly covered, and without more than a proposal (which leaves questions about its probative value), there insufficient reliability of evidence to satisfy the requisite burden of proof. The plaintiff's are entitled to recover $800.00 as damages for the two breakers wrongfully removed.
7. Elevator: The lease conditions required the defendants to maintain, service and repair the freight elevator in the building. The elevator was installed in 1916. Plaintiffs allege that an inspection of the elevator after the defendants showed that repairs totaling $11,262.90 were required. This was the estimated cost to repair a gate, adjust brakes, clean the pit, adjust the door interlocks and repair guide rails. The defendants ?resented evidence which showed they made regular repairs to the elevator as required by periodic inspections by State of Connecticut elevator inspectors. And again, the plaintiff has attempted to prove this claim of damage through cancelled checks to an elevator company and an estimate for the cost of various work he ascribes made necessary by the defendants failure to properly maintain the equipment. The Court is not satisfied that the work proposed is necessary or that the proposed costs are reasonable.
8. Sprinkler System: The lease required the defendants to maintain and service the sprinkler valve and gauges. The parties disagreed as to the extent of the defendants' obligations under the lease. Mr. Cariglia testified that the system had been inspected on a couple of occasions and that it was in functional working order. The Buccinos' insurance carrier required an inspection of the system in order to avoid a dramatic increase in the plaintiffs' insurance costs. There was no evidence that the system was not working when it was inspected. (The plaintiffs offered no testimony from a sprinkler system expert, or insurance inspector, or the like). Again there was no corroboration of the plaintiff Buccino's testimony. It may have been that the system had become obsolete, but the tenant was not obligated to replace it with a more modern one. Without evidence that the old system was not working or dysfunctional, the Court finds insufficient evidence on this issue to allow damages.
9. Leaving of Trash and Debris: Mr. Buccino testified that CT Page 1978 the premises were left strewn with trash, rubbish and other debris, necessitating hours of labor by him in cleaning it up. The Court finds the premises were left in partial disarray. (Exhibits EE, KK, LL). The plaintiffs are entitled to recover the cost of the rental truck and a reasonable hourly rate. The requested rate of $15.00 per hour appears unreasonably high for manual labor. The Court will award 24 hours at $10.00 per hour plus the cost of the truck rental — $35.11.
10. Interest on Loan: This claim of damages is inappropriate in view of the findings herein. It is also not reasonably foreseeable in any event and it is disallowed.
11. Ceiling Paint: In consideration of a reduction in rent, the defendants agreed (in the lease) to paint the second floor ceiling. They admittedly failed to do so. Ultimately the plaintiffs had the ceiling and poles scraped and painted with two coats of paint at a cost of $5,750.00. The lease did not specify scraping or the number of coats, however, it could be interpreted as requiring a reasonably workmanlike job, whatever steps were needed to accomplish that. The parties negotiated a $7,500.00 reduction in rent as a trade for the expected painting, but since the plaintiff was able to get the job properly done for $55,750.00, the Court will award him damages in the amount of $5,750.00.
12. Counsel Fees: The plaintiffs seek $17,353.35 in counsel fees as costs of enforcing the provision; of the lease. (The lease provides for that contingency). The Court declines to award attorney fees. Most of the claims herein were resolved in favor of the defendants and, in addition, there is a counterclaim which will result in judgment for the defendants on the counterclaim. In short, there is no justification to award the more than $17,000.00 in counsel fees requested.
As for the special defenses raised by the defendants, res judicata does not operate to estop the plaintiffs' claims. These claims were not fully litigated in the earlier summary process action between the parties. The remaining special defenses were considered in the foregoing decision as matters of evidence and need no additional amplification.
Accordingly, judgment shall enter for the plaintiffs in the amount of $17,458.15. Costs are not taxed to either party.
Counter-claim
1. Vexatious Suit: The defendants have failed in their CT Page 1979 burden of showing the summary process action brought by the plaintiffs was frivolous or malicious. The defendants had not, in fact) painted the ceiling as required by the lease and that is, in itself, ample reason to reject this claim.
2. Sprinkler Damage: The plaintiff Buccino negligently turned on the sprinkler system causing substantial water damage to the defendants. Cable Tech's insurance carrier paid $27,908.14 for damages caused. Cable Tech is entitled to recover his deductible loss in the amount of $10,000.00.
3. Roof Leak: This allegedly occurred in 1984 when the roof leaked resulting in some damage to the defendants' equipment. Mr. Buccino testified that he repaired the leak in a reasonable time after it was reported. The defendants have not carried their burden of proving he did not.
4. Parking: This claim is disallowed. The defendants were aware that the Buccinos' did not own the lot across -the street and that parking was at the sufferance of that property. Adequate parking was available on the leased premises, even though it may not have been as convenient as the lot across the street. The parking situation was known to the defendants.
5. U-Haul Incident: Mr. Cariglia conceded there was no monetary loss as a result of Mr. Buccino parking a truck in front of the loading dock for several hour. There are no damages therefore.
Judgment shall enter for the defendant on the counterclaim in the amount of $10,000.00, without costs.
Klaczak, J.